Orphans' Court. March. 5, 1818.

*Ridgely's Notebook II, 32.*

## REBECCA CANNON, Widow of Clement Cannon v. CHARLOTTE WHITE, Widow.

Orphans' Court. Sussex. March 6, 1818.

*Ridgely's Notebook II, 49.*

Petition for dower. . . .[1]

[*Cooper* for petitioner. *Robinson* for respondent.]

---

THE CHANCELLOR. The land out of which dower is claimed is part of the real estate late of Constantine Cannon, deceased, the father of Clement Cannon, the late husband of Rebecca Cannon, the petitioner, and also father of Charlotte White, the respondent, the widow of William White, deceased.

Clement Cannon arrived to the age of twenty-one years in 1800 or early in 1801. The land was ordered to him by the Orphans' Court at April, 1801, upon due proceedings had agreeably to the intestate laws. William White was his surety for the payment of the several shares of the appraised value of the land to the other heirs of Constantine Cannon. White, as the guardian or as the agent of the guardian of Clement Cannon, lived in the mansion house, and Cannon with him, during Cannon's minority and about a year after. White, it is alleged, purchased the land in which dower is claimed in April, 1801. He built a dwelling-house on the land and afterwards moved on it early in the year 1802, before the marriage of Clement Cannon with the petitioner. The marriage took place September 26, 1802. From the time that White built on this land and took possession of it, both he and Cannon treated it as White's land.

On November 30, 1801, Baynard White, who married a daughter of Constantine Cannon, drew an order on Clement Cannon

---

[1] After a transcript of the petition and a summary of testimony, which are not here reprinted, at *Ridgely's Notebook II, 53,* the account of this case is interrupted; it is resumed at *73.*

in favor of William White for £158.16.0½, being his, Baynard White's, wife's share of the value of the land. This order was accepted by Cannon December 3, 1801.

On January 15, 1805, John Brown drew an order on Clement Cannon in favor of William White for £16.2.7, which was accepted by Cannon "in part payment of land sold to William White." This is the first writing in which any mention is made of the land being purchased by White. After the death of William White, an amicable action was entered by Clement Cannon against Charlotte White, the respondent, executrix of William White, for divers matters in controversy. Cannon then charged White's executrix with the sum of £386.1.2 and interest thereon from April 28, 1801 for land sold to White. This sum, £386.1.2, with its interest from April 28, 1801, was allowed to Cannon by the arbitrators. The whole testimony proves that the consideration, £386.1.2, was the full value of the land.

White's wife being entitled to a share of the appraised value of the land and a sale of part of the land being made to White were the reasons, perhaps, which induced White to be security for Cannon on the recognizance given on the acceptance of the land; and these circumstances most likely enabled Cannon to accept it.

With respect to the fact of the agreement for the sale of the land to White before the marriage, I have no doubt; for I cannot conceive that White would have erected buildings unless some contract had been made between him and Cannon. It is not credible that he would have incurred so much expense, and that so many acts would have been done by both parties acknowledging and recognizing White to be the owner of the land, if he had not purchased it. No fraud has been imputed to him. Hence it is that I have no hesitation in believing that White agreed with Cannon before the marriage for the purchase of this land. But, if he did, it is said to be a parol contract and is not good. If it had been a mere contract and nothing more, the objection would have been good; but White not only possessed himself of the land, but before the marriage he erected a dwelling house on it and afterwards expended money in improving the land. The house was built and possession taken with the knowledge of Cannon, and repeated acts of ownership were exercised by White in conjunction with Cannon, such as regulating the lines between the two. And, additionally, the order is drawn on Cannon by Brown in favor of White for £16.2.7, and accepted by Cannon, "to be applied in payment of land sold to William White." All which not only establishes the agreement for the sale of the land,

but shows such a performance as gave White a clear right in equity to the land.

But it is said that the acceptance of Brown's order after the marriage is not sufficient to bar the widow, and that a husband at any time in this manner [might] prevail against his wife and defeat her of her dower. All this would be true, and the objection would be unanswerable, if the sale rested on this order only. But that acceptance did not make the contract. It is only evidence of the original contract; and let that transaction be connected with the other circumstances, and the conclusion is inevitable. This acceptance in writing would be sufficient according to the Act of Assembly; and by relation to the building, the possession and improvements made by White, and other acts of the parties before the marriage, the whole proves that, before that event, White had a clear equitable title, and that Cannon, at the time of White's death, was a mere trustee. I refer to the case of *Pym v. Blackburn,* 3 Ves.Jr. 34, and to the note to that case for the authorities where there has been a part performance of a contract. See also *Potter v. Potter,* 1 Ves.Sr. 437.

As there has been no conveyance made by Cannon to White, the legal estate is still in the heirs of Cannon, and they are trustees for the heirs of White. This trust estate, in equity, is considered as equivalent to the legal estate, is governed by the same rules, and is liable to every charge in equity which the other is subject to in law. The trustee is the mere instrument of conveyance and can in no other instance affect the estate, unless by alienation for a valuable consideration to a purchaser without notice. The trust will descend, may be aliened, is liable to debts, to leases and other encumbrances, nay, even to the curtesy of the husband, as if it was an estate at law. It has not yet indeed been subject to dower, more from a cautious adherence to hasty precedents than from any well grounded principle. See 1 P.Wms. 109; 2 P.Wms. 713; 3 P.Wms. 229; 2 Atk. 525; *Burgess v. Wheate,* 1 Bl.R. 138, 161; *Dixon v. Saville,* 1 Bro.C.C. 326; *Attorney General v. Scott,* Talb. 138; 2 Bl.Comm. 337.

For these reasons I am of opinion that Clement Cannon in his lifetime being a mere trustee, his widow, Rebecca Cannon, the petitioner, is not entitled to dower in this land.

Petition dismissed.